1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   ORLANDO CORONEL,

11                     Plaintiff,

12          v.

13   AK VICTORY, et al.,

14                     Defendants.

CASE NO. C13-2304JLR

ORDER GRANTING MOTION
FOR REMAND

15                    **I.    INTRODUCTION**

16        Before the court is Plaintiff Orlando Coronel's amended motion to remand this

17   action to state court pursuant to 28 U.S.C. § 1447(c).  (*See* Mot. (Dkt. # 10).)  Plaintiff

18   originally filed this suit in the King County Superior Court in the State of Washington,

19   alleging claims for maintenance, cure, and lost wages under general maritime law and for

20   damages under the Jones Act, 46 U.S.C. § 30104.  (*See* Compl. (Dkt. # 1-2).)  Defendants

21   AK Victory, Inc. and The Fishing Company of Alaska removed the action to this court,

22   citing 28 U.S.C. § 1333 as the basis for federal subject matter jurisdiction.  (Not. of Rem.

ORDER- 1

1  (Dkt. # 1) at 2.)  Having considered the submissions of the parties, the balance of the

2  record, and the relevant law, and no party having requested oral argument, the court

3  GRANTS Plaintiff's motion for remand.

## II.   BACKGROUND

5      Plaintiff alleges that he was employed as a seaman on the F/V Alaska Victory, a

6  commercial fishing vessel owned and operated by Defendants.  (Compl. ¶¶ 1.1, 2.1-2.3.)

7  Plaintiff alleges that while serving on the Alaska Victory, he sustained injuries first to his

8  left shoulder and later to his right ankle due to the unseaworthiness of the Alaska Victory

9  and the negligence of Defendants.  (*Id.* ¶¶ 4.1-4.2.)  After Plaintiff originally filed suit in

10 Washington state court, Defendants removed the action to this court.  (*See generally* Not.

11 of Rem.)  Plaintiff now moves to remand.  (*See* Mot.)

## III.   ANALYSIS

13     It is a "longstanding, near-canonical rule that the burden on removal rests with the

14 removing defendant." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th

15 Cir. 2006).  It is to be "presumed that a cause lies outside the limited jurisdiction of the

16 federal courts and the burden of establishing the contrary rests upon the party asserting

17 jurisdiction. *Id.* (internal punctuation omitted).  Courts in the Ninth Circuit "strictly

18 construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d

19 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis,* 863 F.2d 662, 663 (9th Cir. 1988)).

20 Similarly, "statutes extending federal jurisdiction . . . are narrowly construed so as not to

21 reach beyond the limits intended by Congress." *Phillips v. Osborne*, 403 F.2d 826, 828

22 (9th Cir. 1968)

In short, federal jurisdiction "must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d 564 (citing *Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1064 (9th Cir. 1979)).

Here, Plaintiff brings two types of claims:  claims under general maritime law and a claim under the Jones Act.  (*See* Compl. ¶ 5.1.)  The court addresses the removability of each type of claim below.  The court concludes that Defendants fail to meet their burden to establish that these either of claims lies within the limited jurisdiction of this federal court. *See Abrego Abrego*, 443 F.3d at 684.

**A.    Claims Under General Maritime Law**

**1. The Removal Statute**

Both parties' arguments for or against the removal of Plaintiff's general maritime law claims focus on the language of the removal statute, 28 U.S.C. § 1441.  The court concludes, however, that it is the statutory grant of admiralty jurisdiction, 28 U.S.C. § 1333, and more than 200 years of precedent interpreting this grant, that ultimately determine the removability of Plaintiff's claims.

The removal statute, as amended in 2011, provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a) (2012).

The statutory grant of admiralty jurisdiction provides:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled. . . .

28 U.S.C. § 1333 (2012).

Defendants reason that because district courts have original jurisdiction over "any civil case of admiralty or maritime jurisdiction," *id.*, Plaintiff's claims under general maritime law can be removed according to the plain language of Section 1441(a), which permits removal of "any civil action brought in a State court of which the district courts . . . have original jurisdiction," 28 U.S.C. § 1441(a) (2012).  (Resp. (Dkt. # 12) at 8-10.) Precedent holds, however, that general maritime claims are not removeable absent an independent ground of federal subject matter jurisdiction, such as diversity jurisdiction. *See, e.g.*, *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1069 (9th Cir. 2001); *In re Dutile*, 935 F.2d 61, 63 (5th Cir. 1991).  Defendants argue that this precedent is inapplicable because it relied on language in the removal statute that was later modified or removed by the 2011 amendments to the Federal Rules of Civil Procedure ("2011 Amendments").  (Resp. at 4-6.)  Specifically, although Section 1441(a) was unchanged by the 2011 Amendments, Section 1441(b) previously read:

> (b) Any civil action of which the district courts have original jurisdiction *founded on a claim or right arising under the Constitution, treaties, or laws of the United States* shall be removable without regard to the citizenship of residence of the parties.  *Any other such action* shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b) (2006) (emphasis added).  The Fifth Circuit reasoned that the prior version of Section 1441(b) constituted an "Act of Congress" that "expressly provided"

1  that maritime claims were not removable under Section 1441(a).  *In re Dutile*, 935 F.2d at

2  63.  Maritime claims do not "arise under" federal law for the purposes of federal question

3  jurisdiction.  *See Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 367 (1959).

4  Accordingly, the Fifth Circuit concluded that maritime claims fell into the category of

5  "any other such action[s]," as defined by the second sentence of then-Section 1441(b),

6  that were removeable only if no defendant was a citizen of the state in which the action

7  was brought.  *In re Dutile*, 935 F.2d at 63.  Although, read strictly, the second sentence of

8  the previous version of § 1441(b) imposes only the forum defendant rule, the Fifth

9  Circuit extrapolated from this sentence that maritime claims could not be removed absent

10  diversity jurisdiction under 28 U.S.C. § 1332.  *Id.*  Other courts followed suit.  *See e.g.,*

11  *Morris*, 236 F.3d at 1069.

12       The 2011 Amendments, however, clarified that the forum defendant rule in

13  Section 1441(b) applies only to actions in which subject matter jurisdiction is based

14  solely on diversity of citizenship, stating:

15       (b) Removal Based on Diversity of Citizenship.—
         . . .
16       (2) A civil action otherwise removable solely on the basis of the jurisdiction
         under section 1332 (a) of this title may not be removed if any of the parties
17       in interest properly joined and served as defendants is a citizen of the State
         in which such action is brought.
18
19  28 U.S.C. § 1441(b) (2012).  Defendants rely on a series of recent cases from lower

20  courts in the Fifth Circuit holding that the removal of the language "any other such

21  action" from Section 1441(b) eliminated the diversity requirement for maritime claims,

22  such that maritime claims are now freely removable as claims over which the federal

courts have original jurisdiction.  *See, e.g., Ryan v. Hercules Offshore, Inc.*, 2013 WL 1967315 (S.D. Tex. 2013); *Wells v. Abe's Boat Rentals Inc.*, 2013 WL 3110322 (S.D. Tex. 2013); *Bridges v. Phillips 66 Co.*, CIV.A. 13-477-JJB, 2013 WL 6092803 (M.D. La. Nov. 19, 2013). *Carrigan v. M/V AMC Ambassador,* CIV.A. H-13-03208, 2014 WL 358353 (S.D. Tex. Jan. 31, 2014).  Defendants argue that the court must implement the plain language of the new version of the removal statute strictly, even if doing so contravenes traditional maritime practices.  (Mot. at 17.)

Plaintiff, for his part, maintains that the 2011 Amendments should not be read to modify the removability of maritime claims.  (Reply (Dkt. # 12) at 2-5.)  Plaintiff cites to the legislative history of the 2011 Amendments to argue that Congress had no intention of reworking the removability of maritime claims.[1]  (Reply at 4-6 (citing *Finley v. United States,* 490 U.S. 545, 554 (1989) ("[I]t will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed.")))  Plaintiff also argues that the removal statute should be read in the context of the overarching history of admiralty jurisdiction, throughout which maritime claims have traditionally not been removable absent an independent ground for federal subject

---

[1] Indeed, the portions of the legislative history that the court has reviewed do not express any intention to rework the removability of maritime claims.  *See, e.g.*, H.R. Rep. No. 112-10, at 11 (2011); *see also Garcia v. United States*, 469 U.S. 70, 76 (1984) ("In surveying legislative history . . . the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill.") Rather, it seems that Congress, to the extent it considered admiralty jurisdiction at all, assumed that admiralty cases were already not removable absent some other basis of federal jurisdiction and that nothing in the 2011 Amendments would change that.  *See* H.R. Rep. No. 112-10 (indicating that the bill tracked a proposal by the American Law Institute, which in turn had expressly excluded claims removable solely due to admiralty jurisdiction based on the understanding that such an exclusion was settled law); *see also* Federal Judicial Code Revision Project, Part III at 334-35 (2004) (American Law Institute proposal).

matter jurisdiction.  (Reply. at 9-12 (citing *Romero*, 358 U.S. at 363)).  Finally, Plaintiff

offers an alternative interpretation of Section 1441(a), stating that the term "original

jurisdiction" in fact means "federal question jurisdiction" under 28 U.S.C. § 1331.[2]

(Reply at 6.)

At first glance, Defendant's argument based on the plain language of the removal

statute is compelling.  This argument, however, elides the distinction between maritime

claims brought in admiralty and maritime claims brought at law.  Specifically,

Defendant's plain language argument is predicated on two erroneous ideas:  (1) that 28

U.S.C. § 1333 confers original federal subject matter jurisdiction over maritime claims

brought at law, and (2) that defendants are permitted to convert plaintiffs' suits at law to

suits in admiralty in order to obtain a federal forum.  As explained below, both premises

are irreconcilable with settled maritime law.

---

[2] The court notes that such an interpretation violates two canons of statutory construction.  First, this interpretation is inconsistent with the remainder of Chapter 28 of the United States Code, in which "original jurisdiction" refers to the courts original jurisdiction in general, and is not limited to a specific type of jurisdiction, federal question or otherwise.  *See, e.g.*, 28 U.S.C. §§ 1331; 1332; 1335.  However, it is a "basic canon of statutory construction that identical terms within an Act bear the same meaning." *Taylor v. Dir., Office of Workers Comp. Programs*, 201 F.3d 1234, 1240 (9th Cir. 2000) .  Second, this interpretation also overlooks the fact that Section 1441(c) of the removal statute refers explicitly to federal question jurisdiction as jurisdiction "arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title)"—not as "original jurisdiction."  28 U.S.C. § 1441(c).  Yet, it is the "usual rule that when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended."  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004).  Plaintiff provides no explanation as to why the court should depart from these principles of statutory construction.

### 2.  History of Admiralty Jurisdiction

#### a.  Statutory grant of admiralty jurisdiction

In order for a lower federal court to exercise subject matter jurisdiction there must be both a constitutional and a statutory basis of jurisdiction.  *See The Mayor v. Cooper,* 73 U.S. (6 Wall.) 247, 252 (1868); *Sheldon v. Sill,* 49 U.S. 441, 442 (1850).  Article III, Section 2 of the United States Constitution vests federal courts with jurisdiction over "all cases of admiralty and maritime jurisdiction."  U.S. Const. art. III, § 2.  Section 9 of the Judiciary Act of 1789 originally codified this grant of jurisdiction as follows:

> That the district courts shall have, exclusively of the courts of the several States . . . exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction . . . within their respective districts as well as upon the high seas; *saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it.*

Ch. 20, § 9, 1 Stat. 76-77 (emphasis added).

The highlighted portion is known as the "saving to suitors" clause.  Congress has revised the language of this clause over the years, but the substance has remained largely unchanged.  *Lewis v. Lewis & Clark Marine, Inc.,* 531 U.S. 438, 443-44 (2001) (citing various revisions to the statute).  The statute now states:  "The district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . any civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.*"  28 U.S.C. § 1333 (2012) (emphasis added).

The Supreme Court has interpreted this clause as preserving to maritime litigants "all means other than proceedings in admiralty which may be employed to enforce the right or to redress the injury involved."  *Lewis,* 531 U.S. at 455 (citing *Red Cross Line v.*

1    *Atlantic Fruit Co.,* 264 U.S. 109, 124 (1924)).  It short, the clause reserves to plaintiffs all

2    remedies traditionally available at common law via in personam proceedings.  *Id.*  As a

3    result, federal courts' admiralty jurisdiction "is 'exclusive' only as to those maritime

4    causes of action begun and carried on as proceedings in rem, that is, where a vessel or

5    thing is itself treated as the offender and made the defendant by name or description in

6    order to enforce a lien." *Madruga v. Superior Court of State of Cal. in & for San Diego*

7    *Cnty.*, 346 U.S. 556, 560-61 (1954); *see also Am. Dredging Co. v. Miller*, 510 U.S. 443,

8    446-47  (1994) ("An *in rem* suit against a vessel is . . . distinctively an admiralty

9    proceeding, and is hence within the exclusive province of the federal courts.").  State

10   courts remain "competent to adjudicate maritime causes of action in proceedings in

11   personam, that is, where the defendant is a person, not a ship or some other instrument of

12   navigation." *Madruga*, 346 U.S. at 561 (internal punctuation omitted).

13        The Supreme Court held that, although the saving to suitors clause preserved state

14   courts' concurrent jurisdiction of in personam maritime claims, it did not prevent federal

15   courts sitting at law from adjudicating common law maritime claims that otherwise fell

16   within the court's subject matter jurisdiction.  *The Belfast*, 74 U.S 624, 644 (1868); *see*

17   *also The Moses Taylor*, 71 U.S. 411, 431 (1866) ("It is not a remedy in the common-law

18   courts which is saved, but a common-law remedy.").  From the beginning, then, the

19   savings clause provided maritime litigants three alternatives:

20           Since the enactment of the Judiciary Act of 1789, maritime suitors have had
             the option of bringing maritime claims (seeking remedies the common law
21         is competent to give) in federal court under admiralty jurisdiction, in state
             court, or in federal court under an independent ground of jurisdiction such
22         as diversity of citizenship.

*The Belfast*, 74 U.S. at 644.  Early cases required a maritime claim brought at law in federal court to establish subject matter jurisdiction on some ground (usually diversity jurisdiction) independent of the grant of admiralty jurisdiction.[3]  *See Leon v. Galceran*, 78 U.S. 185, 188 (1870) ([W]hen the suit is *in personam* against the owner or master of the vessel, the mariner may proceed by libel in the District Court, or he may, at his election, proceed in an action at law either in the Circuit Court, if he and his debtor are citizens of different States, or in a State court.");  *Am. Steamboat Co. v. Chase*, 83 U.S. 522, 533 (1872) (same); *Norton v. Switzer*, 93 U.S. 355, 356 (1876) ("Parties in maritime cases are not . . . compelled to proceed in the admiralty at all, as they may resort to their common-law remedy in the State courts, or in the Circuit Court, if the party seeking redress and the other party are citizens of different States."); *The Belfast*, 74 U.S. at 644 (stating that a maritime litigant "may elect not to go into admiralty at all, and may resort to his common law remedy in the State courts or in the Circuit Court of the United States, if he can make proper parties to give that court jurisdiction of his case").  Similarly, admiralty claims were only removable from state court if they met the requirements of diversity jurisdiction.[4]  *See* Ch. 20, § 12, 1 Stat. 76-77.

_____

[3] The other primary grant of jurisdiction by the Judiciary Act of 1789 was diversity jurisdiction. *See* Ch. 20, § 11, 1 Stat. 76-77.  Federal question jurisdiction was not introduced until 1875.  *See* Jurisdiction and Removal Act of 1875, Ch. 137 § 1, 18 Stat. 470 (repealed 1948).

[4] The Judiciary Act of 1789 only provided for removal jurisdiction of diversity—but not admiralty—claims.  *See* Ch. 20, § 12, 1 Stat. 76-77.

### b.  Differences between maritime claims in admiralty and at law

Admiralty law "includes a host of special rights, duties, rules, and procedures," *Lewis*, 531 U.S. at 446, some of which are unique to suits in admiralty and some of which are applicable to suits at law.  As discussed above, a suit in admiralty provides unique remedies such as *in rem* proceedings against a vessel and maritime liens.  *See Knapp, Stout & Co. Co. v. McCaffrey*, 177 U.S. 638, 642 (1900); *Am. Dredging Co. v. Miller*, 510 U.S. at 446-47; Supp. Admiralty R. (C).  However, the same substantive maritime law applies regardless of whether a maritime cause of action is brought in admiralty or at law.  *Carlisle Packing Co. v. Sandager*, 259 U.S. 255, 259 (1922).  This is because the Supreme Court has consistently distinguished between the concepts of rights and remedies.  *See, e.g.*, *Chelentis v. Luckenbach S.S. Co.,* 247 U.S. 372, 383-84 (1918) ("[U]nder the saving clause a right sanctioned by the maritime law may be enforced through any appropriate remedy recognized at common law . . . .").  As such, a suit brought at law under the savings clause is "not restricted to the enforcement of common law rights."  *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 106 (1946) (citing *Chelentis*, 247 U.S. at 384).  To the contrary, "a right peculiar to the law of admiralty may be enforced either by a suit in admiralty or by one on the law side of the court."  *Id.*  Therefore, the "general rules of the maritime law apply whether the proceeding be instituted in an admiralty or common-law court."  *Carlisle Packing*, 259 U.S. at 259; *see also Seas Shipping*, 328 U.S. at 106 ("When a cause of action in admiralty is asserted in a court of law its substance is unchanged."); *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 222-23 (1986) (holding that states entertaining in personam maritime causes of

1    action are "constrained by a so-called 'reverse-*Erie*' doctrine which requires that the

2    substantive remedies afforded by the States conform to governing federal maritime

3    standards.")

4          As to procedure, historically, the federal courts maintained separate dockets and

5    separate rules of procedure for cases under admiralty and law jurisdiction.  *See*

6    *Wilmington Trust v. U.S. Dist. Court for Dist. of Hawaii*, 934 F.2d 1026, 1029 (9th Cir.

7    1991); Erastus C. Benedict, *Benedict on Admiralty* § 133 (2013).  In 1966, the separate

8    dockets were merged and the Federal Rules of Procedure were made applicable to

9    admiralty claims.  *See* Benedict, *supra*, § 133; *Wilmington Trust*, 934 F.2d at 1029; Fed.

10   R. Civ. P. 1.  Nonetheless, some procedural differences persist.  *See, e.g.*, Fed. R. Civ. P.

11   14(c) (third party practice), 38(e) (no jury trial), 82 (lack of venue restriction), *see*

12   *generally* Supp. Admiralty R. (B) (attachment), (C) (in rem actions); (D) (partition

13   actions), (F) (limitation of liability).  Accordingly, when a claim falls within federal

14   subject matter jurisdiction both on admiralty jurisdiction and on some other ground, a

15   party must designate the claim as an admiralty claim in order for the different procedural

16   rules to apply.  Fed. R. Civ. P. 9(h); *see also Wilmington Trust*, 934 F.2d at 1032 ("A

17   [Rule] 9(h) designation today is equivalent to the earlier practice of filing a claim on the

18   admiralty side of the court prior to the merger.")

19         Perhaps the most salient distinction persisting between maritime claims brought in

20   admiralty and at law is the right to a jury trial.  *Lewis*, 531 U.S. at 455.  The Seventh

21   Amendment does not extend to cases falling within the admiralty jurisdiction; therefore,

22   in the absence of a statute providing otherwise, a district court whose subject matter

1    jurisdiction is premised solely upon admiralty decides the case without a jury.  *See*

2    *Fitzgerald v. U.S. Lines Co.*, 374 U.S.16, 17 (1963); Fed. R. Civ. P. 38(e); *see also*

3    *Ghotra by Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1054-55 (9th Cir. 1997)

4    ("The difference between these choices is mostly procedural; of greatest significance is

5    that there is no right to jury trial if general admiralty jurisdiction is invoked, while it is

6    preserved for claims based in diversity or brought in state court.")

7        **c.  *Romero***

8        The Supreme Court's decision in *Romero v. International Terminal Operating*

9    *Company,* 358 U.S. 354 (1959) is the leading case on the subject admiralty jurisdiction.

10   In *Romero*, the plaintiff seaman, who was injured while working on a cargo vessel, filed

11   claims under general maritime law for maintenance, cure, and unseaworthiness on the

12   law side of the federal district court.[5]  *Id.* at 360.  The plaintiff sought to invoke federal

13   question jurisdiction under 28 U.S.C. § 1331, which granted federal courts original

14   jurisdiction over "all civil actions wherein the matter in controversy . . . arises under the

15   Constitution, laws or treaties of the United States."[6]  *Id.* at 357 (quoting 28 U.S.C. § 1331

16   (1958).)  Federal question jurisdiction was first established under the Judiciary Act of

17   1875.  *Id.* at 360 (citing Act of March 3, 1875, § 1, 18 Stat. 470).  Therefore, the question

18

19   _____

20       [5] The plaintiff also asserted a Jones Act claim, whose disposition is not material to this case.  *Id.* at 360.

21       [6] The federal question statute now reads:  "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331 (2012).

22

1   before the Supreme Court was:  "Whether the Act of 1875 permits maritime claims

2   rooted in federal law to be brought on the law side of the lower federal courts."  *Id.*

3        The Supreme Court answered this question in the negative.  *See id.* at 364, 368

4   (reasoning that the nine classes of judicial power extended by the Constitution, of which

5   admiralty and federal question are two, constitute separate and distinct spheres of

6   jurisdictional authority).  Aside from the textual rationale, the Supreme Court's opinion

7   bespeaks two fundamental principles:  (1) that saving clause cases were not freely

8   cognizable on the law side of federal courts under 28 U.S.C. 1333, and (2) that saving

9   clause cases were not removable based on the court's original admiralty jurisdiction

10  alone.

11       First, inherent in both the majority and the dissent's analysis is the conception that

12  28 U.S.C. § 1333 did not convey subject matter jurisdiction to federal courts hearing

13  maritime claims brought at law. [7]  The majority reaffirmed that, under the first Judiciary

14  Act of 1789, admiralty jurisdiction was "exercised according to the historic procedure in

15  admiralty, by a judge without a jury.  In addition, common-law remedies were, under the

16  saving clause, enforceable in the courts of the States and on the common-law side of the

17  _____

18       [7] *Romero* resolved a circuit split.  On one side of the split, the Second Circuit held that "[t]here is
    no doubt that the 'saving to suitors' clause in intended to save common law remedies and, since these are
19  referred to as 'other' remedies in the present form of the statute it is inescapable, under the letter of the
    present form, that common law remedies are not included in the grant of admiralty and maritime
    jurisdiction." *Paduano v. Yamashita Kisen Kabushiki Kaisha*, 221 F.2d 615, 620 (2d Cir. 1955).  The
20  court noted that the saving to suitors clause could be interpreted as either (1) saving common law
    remedies from federal courts' exclusive jurisdiction or (2) saving common law remedies from federal
21  courts' original jurisdiction.  *Id.* at 620-21.  The court found that, the based on the language of section 9
    of the Judiciary Act of 1789 that withheld jury trials from admiralty claims, Congress intended to except
22  common law remedies from federal court's original jurisdiction.  *Id.*

1   lower federal courts *when the diverse citizenship of the parties permitted*." *Id.* at 363

2   (emphasis added).  The majority balked at the suggestion that the Act of 1875 permitted

3   maritime claims to be brought on the law side of federal courts because "[t]here is not the

4   slightest indication of any intention . . . from which it can be inferred that by the new

5   grant of jurisdiction of cases 'arising under the Constitution or laws' a drastic innovation

6   was impliedly introduced in admiralty procedure, whereby Congress changed the method

7   by which federal courts had administered admiralty law for almost a century." *Id.* at 369.

8   The majority found that "[t]o draw such an inference is to find that a revolutionary

9   procedural change had undesignedly come to pass." *Id.* (reasoning that, if general

10  maritime claims fell under federal question jurisdiction, the admiralty courts would then

11  have no role except to afford *in rem* remedies).  But if maritime claims at law were

12  already freely cognizable on the law side of the court under Section 1333, the application

13  of federal question jurisdiction to maritime claims would not have been viewed as

14  working a "drastic innovation" or "revolutionary procedural change" in the

15  administration of admiralty claims.  So, too, would admiralty courts have already been

16  limited to deciding in rem actions.

17         Justice Brennan, dissenting in part and concurring in part, also started from the

18  same premise.  The dissent stated that, with respect to the Saving Clause, "[i]t is clear

19  from the Court's language that the common-law remedies saved to suitors could properly

20  be enforced in any tribunal *otherwise having jurisdiction* . . ." *Id.* at 498 (Brennan, J.,

21  dissenting) (emphasis added).  When referencing pre-1875 cases holding that saving

22  clause actions could be brought on the law side of a federal court only when there was

1   diversity of citizenship, the dissent confirmed that that "it can hardly be denied that these

2   statements were correct when made." *Id.* at 406.  The dissent then framed the issue as

3   one of exclusion, arguing:  "There is no compelling reason why § 1333, which does not

4   exclude maritime actions from being brought at law in a federal court under § 1332,

5   should exclude them from being so brought under § 1331." *Id.* at 396.  Implicit in the

6   statement that Section 1333 did not exclude maritime actions brought at law under

7   diversity is the premise that Section 1333 did not itself grant jurisdiction over maritime

8   actions at law.[8]

9           Second, fundamental to the majority's analysis is the concept that saving clause

10  cases were not removable under Section 1441(a) based on the court's original admiralty

11  jurisdiction alone.  Specifically, the majority was concerned that including maritime

12  claims within the scope of federal question jurisdiction would take away the "historic

13  option of a maritime suitor pursuing a common-law remedy to select his forum, state or

14  federal," because "saving-clause actions would then be freely removable under" Section

15  1441(b).[9] *Id.* at 372.  Emphasizing the joint role that state and federal governments

16  played in developing and administering maritime law, the majority found that unfettered

17  removal of maritime claims would vitiate the principles of federalism underlying the

18  _____

19  [8] Although the dissent maintained that "there is no authority for limiting the law-side jurisdiction
to diversity cases once the 1875 Act had been passed," *Romero*, 358 U.S. at 396 (Brennan, J.,
dissenting), today, of course, the majority opinion in *Romero* provides just that authority.

20

21  [9] Section 1441(b) at the time provided that "[a]ny civil action of which the district courts have
original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the
United States shall be removable without regard to the citizenship of the parties."  28 U.S.C. § 1441(b)
22  (1958).

ORDER- 16

1   saving to suitors clause.  *Id.* at 372-75 ("By making maritime cases removable to the

2   federal courts it would make considerable inroads into the traditionally exercised

3   concurrent jurisdiction of the state courts in admiralty matters—a jurisdiction which it

4   was the unquestioned aim of the saving clause of 1789 to preserve.")  Both of these

5   principles, which inform the question confronting the court today, have been borne out

6   time and again in caselaw since *Romero*.

7          **d.  Court decisions post-*Romero***

8          After the decision in *Romero*, courts have continued to distinguish between

9   maritime claims brought at law and in admiralty, and have consistently required an

10  independent basis of subject matter jurisdiction for maritime claims filed at law.  For

11  instance, the Ninth Circuit Court of Appeals recognized that the "'saving-to-suitors'

12  clause establishes the right of a party to choose whether to proceed within the court's

13  admiralty jurisdiction or general civil jurisdiction when both admiralty and non-admiralty

14  federal jurisdiction exist" and that "[m]any claims . . . are cognizable by the district

15  courts whether asserted in admiralty or in a civil action, assuming the existence of a

16  nonmaritime ground of jurisdiction."  *Wilmington Trust,* 934 F.2d at 1029.  The Ninth

17  Circuit also reiterated that a plaintiff with in personam maritime claims has three choices:

18  "He may file suit in federal court under the federal court's admiralty jurisdiction, in

19  federal court under diversity jurisdiction if the parties are diverse and the amount in

20  controversy is satisfied, or in state court."  *Ghotra by Ghotra*, 113 F.3d at 1054-55.

21  Accordingly, the Ninth Circuit reversed a district court's holding that the plaintiff's

22  claims under maritime law were only cognizable in admiralty because "the proper focus

1    is on whether the suit could have been brought at 'common law,' that is, whether the

2    court had an independent basis for jurisdiction and whether this was the type of claim that

3    historically could be brought in state court or on the law side of the district court."[10] *Id.*

4    at 1055 (granting jury trial on maritime law claims where diversity jurisdiction was

5    present).

6           Similarly, courts have maintained that saving clause claims cannot be removed

7    from state court absent a ground of federal jurisdiction other than admiralty jurisdiction.

8    For example, the Eleventh Circuit held:  "Thus, under the reasoning of *Romero*, a federal

9    district court should not accept the removal of a saving clause case solely because of its

10   general maritime nature: the maritime nature simply does not provide a ground for

11   federal jurisdiction."  *Armstrong v. Alabama Power Co.*, 667 F.2d 1385, 1388 (11th Cir.

12   1982); *see also In re Chimenti*, 79 F.3d 534, 537 (6th Cir. 1996) (finding that "admiralty

13   and maritime claims are not removable to federal court unless there exists some

14   *independent* basis, such as diversity of the parties, for federal jurisdiction."); *Morris,* 236

15   F.3d at 1069 (same).  Additionally, courts have recognized that saving clause claims can

16   be removed not only based on diversity jurisdiction, but also on other independent

17   grounds of federal subject matter jurisdiction, such as federal maritime statutes.  *See, e.g.*,

18   _____

19        [10] *See also Linton v. Great Lakes Dredge & Dock Co.*, 964 F.2d 1480, 1487 (5th Cir. 1992)

20   ("Generally a plaintiff may elect to bring a maritime *in personam* action (1) 'in admiralty,' or (2) 'at law.'
     If the plaintiff elects to proceed 'in admiralty,' not only must he sue in federal court but he must also
     designate his federal claim as 'an admiralty and maritime claim' under Federal Rule of Civil Procedure

21   9(h). . . . On the other hand, if the plaintiff elects to proceed 'at law,' he has two options.  First, he could
     sue on the 'law side' of the federal court . . . if there exists an independent, nonadmiralty basis of

22   jurisdiction. . . . Second, plaintiff could sue 'at law' in state court.") (internal punctuation and citations
     omitted).

1   *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 220 (5th Cir. 2013) (holding that the

2   Outer Continental Land Shelf Act ("OCLSA") provides a basis for federal question

3   jurisdiction in addition to admiralty jurisdiction, even when the plaintiff's OCLSA claims

4   implicate general maritime law); *Servis v. Hiller Sys. Inc.*, 54 F.3d 203, 206-07 (4th Cir.

5   1995) ("Admiralty and maritime cases may, however, be removable to federal court when

6   there exists some independent basis for federal jurisdiction, such as diversity of

7   citizenship, or when federal jurisdiction is independently established by a federal

8   maritime statute. The SAA [Suits in Admiralty Act] or PVA [Public Vessels Act] would

9   provide just such an independent basis for federal jurisdiction . . . .").

10       Finally, since the decision in *Romero*, some courts have expressly stated that 28

11   U.S.C. § 1333 does not grant original jurisdiction over maritime claims brought on the

12   law side of the court.  For instance, a district court remanded a maritime claim originally

13   brought in state court because "even if the identical facts would have supported a federal

14   admiralty action in the first instance, the fact is that plaintiff brought this in state court as

15   a *civil* action.  That civil action, lacking diversity or a federal question as a basis for

16   federal jurisdiction, could not have been brought originally in federal court."  *Queen*

17   *Victoria Corp. v. Ins. Specialists of Haw., Inc.,* 694 F. Supp. 1480, 1483 (D. Haw. 1988).

18   Similarly, a district court remanded a maritime claim brought in state court because a

19   common law claim brought pursuant to the savings clause "is not now, and never was, a

20   part of the admiralty jurisdiction within the exclusive grant of admiralty jurisdiction

21   contained in § 1333" and there was no federal question or diversity jurisdiction over the

22   claim.  *J. J. Ryan & Sons, Inc. v. Cont'l Ins. Co.*, 369 F. Supp. 692, 697 (D.S.C. 1974);

1  *see also J. Aron & Co. v. Chown*, 894 F. Supp. 697, 699-700 (S.D.N.Y. 1995)

2  ("Fundamentally, the problem is that, once Aron elected to commence *Chown* as a

3  common law action and not an admiralty action, there was no basis for a federal court to

4  assert admiralty jurisdiction over *Chown*. . . .  Thus, removal of *Chown* was improper

5  because *Chown* was never a civil action over which the federal district courts have

6  original jurisdiction."); *Vincent v. Regions Bank*, 808-CV-1756-T-23EAJ, 2008 WL

7  5235114, at *1 (M.D. Fla. Dec. 15, 2008) ("The plaintiff's election to sue at common law

8  in state court forever prevents the federal district courts from obtaining admiralty

9  jurisdiction.").

10      **3.  Application to Plaintiff's Claims**

11      As the preceding analysis shows, throughout the history of federal admiralty

12  jurisdiction—from the Judiciary Act of 1789 through *Romero* and up to the present—

13  courts have given no indication that maritime claims are cognizable on the law side of

14  federal courts absent subject matter jurisdiction independent of 28 U.S.C. § 1333.

15      Turning to Plaintiff's claims, Section 1441(a) only permits removal of civil actions

16  of which the district courts have "original jurisdiction."  28 U.S.C. § 1441(a).  By

17  definition, a party cannot bring a claim in admiralty in state court.  *See Barker*, 713 F.3d

18  at 222 ("[A]dmiralty jurisdiction is not present in this suit because Barker filed in state

19  court, therefore invoking the saving-to-suitors exception to original admiralty

20  jurisdiction."); *Linton v. Great Lakes Dredge & Dock Co.*, 964 F.2d 1480, 1487 (5th Cir.

21  1992) ("Because admiralty jurisdiction is exclusively federal, a true 'admiralty' claim is

22  never cognizable in state court.")  As such, Plaintiff's claims for unseaworthiness,

1   maintenance, cure, and lost wages filed in Washington state court are necessarily brought

2   at law, not in admiralty.

3        But this court would not have had original jurisdiction over these claims at law

4   had they initially been filed in federal court.  As discussed above, 28 U.S.C. § 1333 alone

5   does not provide federal subject matter jurisdiction over maritime claims on the law side

6   of the court.  *See Romero*, 358 U.S. at 369; *Ghotra by Ghotra*, 113 F.3d at 1054-55;

7   *Queen Victoria*, 694 F. Supp. at 1483.  The mere fact that these claims implicate general

8   maritime law does not establish federal question jurisdiction under 28 U.S.C. § 1331.

9   *Romero*, 358 U.S. at 386.  As to diversity jurisdiction under 28 U.S.C. § 1332, it appears

10  that both defendants are residents of the state of Washington.[11]  (*See* Compl. ¶¶ 2.2, 2.3;

11  Mot. at 5.)  Accordingly, even if the parties were diverse, because Defendants are

12  residents of the state in which this action was initially filed, the forum defendant rule

13  prevents removal on the basis of diversity jurisdiction.  *See* 28 U.S.C. § 1441(b)(2) ("A

14  civil action otherwise removable solely on the basis of the jurisdiction under section

15  1332(a) of this title may not be removed if any of the parties in interest properly joined

16  and served as defendants is a citizen of the State in which such action is brought.").

17  Defendants provide no other bases on which this court could have exercised original

18  jurisdiction over Plaintiff's saving clause claims.  *See Abrego Abrego*, 443 F.3d at 684

19  (stating the "longstanding, near-canonical rule that the burden on removal rests with the

20  _____

21  [11] Although Plaintiff's complaint establishes only that each Defendant is "a corporation or some
    other legal entity licensed to and doing business in the State of Washington" (Compl. ¶ 2.2, 2.3),
    Plaintiff asserts that "[i]t is undisputed that defendants are citizens of the State of Washington" for the

22  purposes of diversity jurisdiction.  (Mot. at 5.)  Defendants, who bear the burden of showing jurisdiction,
    do not dispute this assertion.  (*See generally* Resp.)

removing defendant").  Because Plaintiff could not have brought his maritime claims on

the law side of the court in the first place, removal is not now appropriate.

Of course, this court could have exercised original jurisdiction over Plaintiff's

claims in admiralty had they been so filed.  *See* 28 U.S.C. § 1333 (2012).  The argument

can be made that therefore Plaintiff's claims are now removable to the admiralty side of

the court.  However, such a result would vitiate the saving to suitors clause, which saves

to plaintiffs the ability to proceed on their claims at law, instead of in admiralty.  *See*

*Lewis*, 531 U.S. at 445; *Wilmington Trust*, 934 F.2d at 1029.  Not only would removal

interfere with the balance of judicial power between federal and state courts upheld in

*Romero*, but it would deprive the plaintiff of his long-recognized choice of remedies,

including, potentially, his right to a jury trial.[12]  *See J. J. Ryan & Sons*, 369 F. Supp. at

696; *Ghotra by Ghotra*, 113 F.3d at 1055-56.  It is true that a few courts have found that a

failure to object to removal of maritime claims waives the right to remand and effectively

converts a plaintiff's claims at law into claims at admiralty.  *See Morris,* 236 F.3d at

1069.  That situation, however, is not currently before the court; Plaintiff has timely

objected to the removal of his claims.  Due to Plaintiff's stated desire to invoke the

protections of the saving to suitors clause, and in light of *Romero* and its progeny's

_____

[12] In federal court, Federal Rule of Civil Procedure 38(e) provides that claims within the admiralty jurisdiction of the court are not guaranteed a jury trial. Fed. R. Civ. P. 38(e).  Plaintiff's right to jury trial in state court depends on Washington civil procedure.  *Linton*, 964 F.2d at 1487.  Defendant argues that Plaintiff has not yet requested a jury trial. (Not. of Rem. at 2.)  It is not, however, clear that Plaintiff's ability to request a jury trial is foreclosed:  Washington Civil Rule 38 provides that a party may demand a jury any time "at or prior to the time the case is called to be set for trial."  Wa. R. Super. Ct. CR 38.

1  emphasis on the significance of the clause, the court finds that removal to the court's

2  admiralty jurisdiction is not appropriate.

3          Tradition aside, the court is aware that the practical justifications for continuing to

4  strictly delineate between the federal court's "admiralty" and "in law" jurisdiction have

5  greatly diminished over the years.  To wit:  the admiralty and law dockets have been

6  merged for almost half a century, the Federal Rules of Civil Procedure apply to both

7  types of claims, the same substantive rights and remedies are applicable to both types of

8  in personam claims, and the ascendance of substantive federal general maritime law vis-

9  à-vis state maritime law has only increased.  *See Wilmington Trust*, 934 F.2d at 1029

10  (merger of admiralty and law); Fed. R. Civ. P. 1 (Federal Rules of Civil Procedure

11  applicable to all civil claims); *Carlisle Packing*, 259 U.S. at 259 (same general maritime

12  law applied in cases in admiralty and at law); *Offshore Logistics*, 477 U.S. at 222-23

13  (under the "reverse-*Erie*" doctrine, application of state maritime law must not conflict

14  with federal maritime law).  Indeed, courts' reluctance to permit removal of maritime

15  cases has been criticized as an overly formalistic adherence to an out-dated and

16  inefficient mode of administering maritime law.  *See, e.g.*, Steven F. Friedell, *The*

17  *Disappearing Act: Removal Jurisdiction of an Admiralty Claim*, 30 Tul. Mar. L.J. 75

18  (2006) (arguing that there is no practical reason to prevent removal of claims within the

19  court's admiralty jurisdiction); *Romero*, 358 U.S. at 410 (Brennan, J., dissenting)

20  (questioning the necessity of protecting state courts' limited role in the development of

21  maritime law); *but see* Rory Bahadur, *Maritime Removal: An Unlikely Heuristic for*

22

1  *Anchoring Three Non-Textual Principles of Original Federal Jurisdiction*, 43 J. Mar. L.

2  & Com. 195 (2012) (arguing in favor of adhering to tradition).

3      The court declines to join this debate.  At the end of the day, this court's role is to

4  adhere to the precedent before it.  In this order, the court seeks to give effect to not only

5  the judiciary's long-standing interpretation of the savings clause of Section 1333, but also

6  the considerations expressed in *Romero* and echoed in later cases precluding removal of

7  savings clause claims.  In doing so, the court does not comment on the continued viability

8  of these considerations or the expediency of the end result.

9      Rather, the court remains mindful that "[a]t the core of the federal judicial system

10  is the principle that the federal courts are courts of limited jurisdiction." *Libhart*, 592

11  F.2d at 1064.  As such, "statutes extending federal jurisdiction . . . are narrowly

12  construed," *Phillips*, 403 F.2d at 828, and "[f]ederal jurisdiction must be rejected if there

13  is any doubt as to the right of removal in the first instance," *Gaus*, 980 F.2d at 566.  In

14  light of these principles, the court concludes that federal jurisdiction over Plaintiff's

15  general maritime claims does not lie.

16  **B.    Jones Act Claim**

17      In addition to his claims under general maritime law, Plaintiff also brings a claim

18  under the Jones Act, 46 U.S.C. § 30104 *et seq.*  (Compl. ¶ 5.1.)  The Jones Act provides

19  to any "seaman injured in the course of employment" a cause of action against her

20  employer.  46 U.S.C. § 30104.  The Jones Act incorporates the Federal Employees

21  Liability Act ("FELA"), 45 U.S.C. § 51 et seq.  *See* 46 U.S.C. § 30104 ("Laws of the

22  United States regulating recovery for personal injury to, or death of, a railway employee

ORDER- 24

1  apply to an action under this section.")  Pursuant to 28 U.S.C. § 1445, FELA actions

2  brought in state court are nonremoveable.  28 U.S.C. § 1445(a) ("A civil action in any

3  State court . . . arising under . . . 45 U.S.C. 51-54, 55-60[] may not be removed to any

4  district court of the United States.")  Therefore, a Jones Act claim "is not subject to

5  removal to federal court even in the event of diversity of the parties."  *Lewis*, 531 U.S. at

6  455.

7       Defendants concede that "[g]enerally speaking, Jones Act claims are non-

8  removable."  (Resp. at 5; *see also id.* at 9.)  Nonetheless, Defendants argue that

9  Plaintiff's Jones Act claim is removable in this situation because (1) Plaintiff's general

10  maritime claims are removable, and (2) Section 1441(c), which ordinarily requires

11  nonremovable claims to be severed and remanded to state court, does not apply to

12  combinations of claims in which one claim falls under the court's admiralty

13  jurisdiction.[13]  (*See* Resp. at 10-12.)  Because the court finds that Plaintiff's general

14  maritime claims are not removable, Defendant's argument necessarily fails at step one.

15  Plaintiff's Jones Act claim is not removable.  *Lewis*, 531 U.S. at 455.

16

17      [13] Specifically, Section 1441(c) provides

18  (1) If a civil action includes—
   (A) a claim arising under the Constitution, laws, or treaties of the United States (within
   the meaning of section 1331 of this title), and

19  (B) a claim not within the original or supplemental jurisdiction of the district court or a
   claim that has been made nonremovable by statute,  the entire action may be removed if

20  the action would be removable without the inclusion of the claim described in
   subparagraph (B).

21  (2) Upon removal of an action described in paragraph (1), the district court shall sever
   from the action all claims described in paragraph (1)(B) and shall remand the severed
   claims to the State court from which the action was removed.

22  28 U.S.C. § 1441(c) (2012).

### IV.   CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiffs' motion for remand. (Dkt. # 10.)  The court ORDERS that:

1.   Pursuant to 28 U.S.C. §§ 1447(c) and 1447(d), all further proceedings in this case are REMANDED to the Superior Court for King County in the State of Washington;

2.  The Clerk of the Court shall send copies of this order to all counsel of record for all parties;

3.  Pursuant to 28 U.S.C. § 1447(c), the Clerk of the Court shall mail a certified copy of the order of remand to the Clerk of the Court for the Superior Court for King County, Washington;

4.  The Clerk of the Court shall also transmit the record herein to the Clerk of the Court for the Superior Court for King County, Washington;

5.  The parties shall file nothing further in this matter, and instead are instructed to seek any further relief to which they believe they are entitled from the courts of the State of Washington, as may be appropriate in due course; and

6.  The Clerk of the Court shall CLOSE this case.

Dated this 28th day of February, 2014.

JAMES L. ROBART
United States District Judge